IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DAVID H. JACOB,

                        Plaintiff,

        vs.

ROSALYN COTTON, Chairperson of
the Nebraska Board of Parole; REX
RICHARD, Member of the Nebr. Board
of Parole; RANDALL L. REHMEIER,
Member of the Nebraska Board of
Parole; TERESA L. BITTINGER,
Member of the Nebraska Board of
Parole; and VIRGIL J. PATLAN,
Member of the Nebraska Board of
Parole;

                        Defendants.

8:17CV215


MEMORANDUM
AND ORDER

        This matter is before the court on Plaintiff's Motion to Alter or Amend Judgment under Fed. R. Civ. P. 59(e). (Filing No. 6.) The court dismissed Plaintiff's Complaint with prejudice, finding that collateral estoppel, or issue preclusion, applies here because Plaintiff attempts to relitigate in federal court the issues decided against him in the state courts. (Filing No. 4.) In the alternative, the court agreed with the analysis of the Nebraska Court of Appeals and found that Plaintiff fails to state a claim upon which relief may be granted. (*Id.*)[1]

---

[1] The court adds that the parole board members are entitled to absolute immunity from damages in their individual capacities regarding their decision to defer Plaintiff's case for review. *See Patterson v. Von Riesen*, 999 F.2d 1235, 1239 (8th Cir. 1993) ("[p]arole board members are absolutely immune from suit when considering and deciding parole questions.").

A district court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e). *United States v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006). Rule 59(e) motions serve the limited function of correcting "manifest errors of law or fact or to present newly discovered evidence." *Id.* (quoting *Innovative Home Health Care v. P.T.-O.T. Assoc. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998)). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Id.*

Plaintiff argues that collateral estoppel does not apply to his case because he did not receive a "full and fair" opportunity to litigate the issues in the state courts. (Filing No. 6.) The documents included with this Memorandum and Order from Plaintiff's state court cases[2] show otherwise. Accordingly,

IT IS THEREFORE ORDERED that: Plaintiff's Motion to Alter or Amend (Filing No. 6) is denied.

Dated this 29th day of September, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge

---

[2] *See Jacob v. Cotton and Nebraska Board of Parole*, Lancaster County District Court Case No. CI 15-179 and Nebraska Court of Appeals Case No. A-15-1037, at https://www.nebraska.gov/justice//case.cgi. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (court may take judicial notice of judicial opinions and public records).

# IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA

| | |
|---|---|
| DAVID H. JACOB, | Case Number: CI 15-179 |
| Petitioner, | |
| v. | ORDER |
| ROSALYN COTTON, in her official capacity; and THE NEBRASKA BOARD OF PAROLE, | |
| Respondents. | |

This matter came on before the Court on March 31, 2015 on the Respondents' Motion to Dismiss. Petitioner was representing himself and participated telephonically. Assistant Attorney General Kyle Citta appeared on behalf of the Respondents. The matter was taken under advisement.

## Facts

The Petitioner, David Jacob, is an inmate incarcerated at the Nebraska State Penitentiary in Lincoln, Nebraska. In 1986, the Petitioner was convicted of three counts of second degree murder and two counts of use of a weapon to commit a felony. He was sentenced to three life terms on the second degree



1



001576334D02



murder charges and not less than six nor more than twenty years on each of the firearms charges. The court ordered that all five sentences be served consecutively. At the time of his 1986 convictions, the minimum sentence for second degree murder was 10 years. The Petitioner's parole eligibility date was calculated for January 17, 2015.

In 1995, the State Legislature increased the minimum sentence for second degree murder from ten (10) years to twenty (20) years. On August 7, 2014, the Nebraska Board of Parole reviewed the Petitioner's case and deferred his case to an August 2015 Board Review for the reasons set forth in NEB. REV. STAT. § 83-1,114(1)(b) and (d).

## Standard of Review

In reviewing a motion to dismiss under NEB. CT. R. PLDG. § 6-1112(b)(6), the court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefore, but not the pleader's conclusions. *Zawaideh v. Nebraska Dep't of Health and Human Servs. Reg. and Licensure*, 280 Neb. 997, 1004, 792 N.W.2d 484, 492 (2011). To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face. *Doe v. Board of Regents*, 280 Neb. 492, 506, 788 N.W.2d 264, 278 (2010). In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are

2

nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim. *Id.*

## Analysis

Petitioner seeks a judgment under the Uniform Declaratory Judgments Act, NEB. REV. STAT. § 25-21,149 to 25-21,164 (Cum. Supp. 2014 and Reissue 2008) and, after liberally construing his petition, states three claims.

1. That the Court declare that NEB. REV. STAT. § 83-1,1114 is unconstitutional as a violation of Petitioner's ex post facto rights because the statute "retroactively increases both the duration and severity of the petitioner's punishment."

2. That the Court declare NEB. REV. STAT. § 83-1,1114(b) unconstitutional as it violates Nebraska's separation of powers clause.

3. That the Court declare NEB. REV. STAT. § 83-1,1111 unconstitutional as it is a violation of Petitioner's due process rights.

### Ex Post Facto Claims

The Petitioner argues that the interconnection between NEB. REV. STAT. §§ 28-105, 83-192 and 83-1,1114(1)(b) comprises a "stealthy procedure" that the parole board uses to increase the Petitioner's minimum sentence and thus changing the Petitioner's suitability for parole long after he has been sentenced.

A law which purports to apply to events that occurred before the law's

enactment, and which disadvantages a defendant by creating or enhancing penalties that did not exist when the offense was committed is an ex post facto law and will not be endorsed by the courts. *State v. Gales*, 265 Neb. 598, 658 N.W.2d 602 (2003).

Ex post facto laws are those which,

1. Punish as a crime an act previously committed which was innocent when done;

2. Aggravate a crime, or make it greater than it was, when committed;

3. Change the punishment and inflict a greater punishment than was imposed when the crimes was committed; and

4. Alter the legal rules of evidence such that less or different evidence is needed in order to convict the offender.

*State v. Kibbee*, 284 Neb. 72, 83-84 (2012). In analyzing the petition, Petitioner's ex post facto claims are that his punishment is being changed to inflict a greater punishment than was imposed when his crimes were committed or his crimes were aggravated or made greater than when they were committed.

In 1995, the State Legislature increased the minimum penalty for second degree murder from ten (10) years to twenty (20) years (1995 LB 371) declaring that ten (10) years "was no longer enough to overcome the criteria of depreciating the seriousness of the offense or promoting disrespect for the law". Under NEB. REV. STAT. §83-1,1114 (1)(b), an inmate's parole review may

4

be deferred if "his or her release would depreciate the seriousness of his or her crime or promote disrespect for the law".

The Petitioner argues that by the legislature changing the minimum sentence for second degree murder from ten (10) to twenty (20) years and including the language that ten years was "no longer enough to overcome the criteria of depreciating the seriousness of the offense or promoting disrespect for the law" and having the Parole Board then defer his parole review under NEB. REV. STAT. § 83-1,1114 (1)(b) for the reason that "the nature/circumstances of your offense(s) indicate that an early release would depreciate from the seriousness of your crime and promote disrespect for the law", the board is applying the 1995 increase in minimum sentences for second degree murder ex post facto to alter petitioner's suitability for parole.

The quoted language in NEB. REV. STAT. § 83-1,114(1)(b) was enacted in 1969. The legislative intent language accompanying the increase in the minimum sentence for second degree murder was passed in 1995. The language contained in NEB. REV. STAT. § 83-1,114(1)(b) was enacted 26 years before 1995 LB 371. The mere fact that the language is included in 1995 LB 371 does not implicate the ex post facto clause. For these reasons, the Petitioner's first claim does not state a claim upon which relief can be granted.

## Separation of Powers

The Board of Parole's authority is derived from Article IV, §13 of the

5

Nebraska Constitution, which provides in part:

> The Legislature shall provide by law for the establishment of a
> Board of Parole and the qualifications for its members. Said board,
> or a majority thereof, shall have power to grant paroles after
> conviction and judgment, under such conditions as may be
> prescribed by law, for any offenses committed against the criminal
> laws of this state except treason and cases of impeachment.

As can be gleaned from the petition and the argument contained in the

Petitioner's brief, the Petitioner claims that NEB. REV. STAT. §83-1,114 (1)(b)

violates the separation of powers clause in that it requires the Parole Board, an

executive branch agency, to make a finding of fact which is a function reserved

for the judicial branch. The Petitioner further argues that by allowing the Board

of Parole to make a second fact finding increases the severity of the

punishment, is not authorized and is ex post facto. Additionally, the Petitioner

claims that by allowing the Board of Parole to make a quasi judicial

determination, the Petitioner should therefore be allowed a judicial appeal.

The language that the Board of Parole relied on was enacted in 1969.

The increase in the minimum sentence for second degree murder was enacted

in 1995.   The Petitioner's assertions that § 83-1,114(1)(b) violates the

separation of powers has no basis in the law or under the facts pled. As such,

it is not a viable claim upon which relief can be granted.

## Due Process Violations

Petitioner asserts that not providing a hearing with it's process of judicial

appeal is violating his right to due process (Petition, pg. 11).  While Nebraska

6

gives some constitutional protection regarding parole eligibility, the state's procedure provides all the due process with respect to the discretionary parole decision. *See, Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1; 99 S. Ct. 2100 (1979). "The Nebraska procedure affords an opportunity to be heard, and when parole is denied it informs the inmate in what respects he falls short of qualifying for parole; this affords the process that is due under these circumstances. The Constitution does not require more." Since the board of parole's decision at its initial review hearing is one that must be made largely on the basis of the inmate's file, this procedure adequately safeguards against serious risks of error and thus satisfies due process. *Id.* at 16; 2108.

In *Moore v. Neb. Bd. of Parole*, 12 Neb. App. 525; 679 N.W.2d 427 (2004), the Petitioner argued that *Greenholtz* gave rise to a state-created, due process interest in parole. *Id.* at 538; 438. The *Moore* court disagreed, stating that the Petitioner's "argument that he has a protected state-created liberty interest in being paroled is without merit." *Id.* at 539 *Meachum v. Fano*, 427 U.S. 215, 224 (1976). The Petitioner has failed to make a valid due process claim, therefore Petitioner has failed to state a claim upon which relief can be granted. Accordingly, the Court finds that the Petitioner has failed to state any plausible claim for relief and the respondents are entitled to dismissal of the petition.

It is therefore ordered that the Respondents' Motion to Dismiss is

7

granted. The Petitioner's petition is dismissed at Petitioner's costs.

SO ORDERED.

Dated October _27_, 2015.

BY THE COURT:

Andrew R. Jacobsen
District Judge

8

## CERTIFICATE OF SERVICE

I, the undersigned, certify that on October 28, 2015  , I served a copy of the foregoing document upon the following persons at the addresses given, by mailing by United States Mail, postage prepaid, or via E-mail:

Kyle J Citta
kyle.citta@nebraska.gov

Date:  October 28, 2015        BY THE COURT: _____

                                             CLERK

**FILED**

JAN 25 2016

NEBRASKA SUPREME COURT
COURT APPEALS

## IN THE NEBRASKA COURT OF APPEALS

DAVID H. JACOB,

        Appellant,

  vs.

ROSALYN COTTON, Chairperson,

NEBR. BOARD OF PAROLE,

        Appellees.

ON APPEAL FROM

THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA

The Honorable Andrew R. Jacobsen, District Court Judge

APPELLANT'S BRIEF

David H. Jacob, pro se
P.O. Box 2500-37269
Lincoln, NE  68542-2500



000068067NSC

# TABLE OF CONTENTS

Table of Citations . . . . . . . . . . . . . . .  i

Statement  Jurisdiction . . . . . . . . . . . .  1

Statement of the Case . . . . . . . . . . . . .  1

Assignments of Error . . . . . . . . . . . . .  2

Propositions of Law . . . . . . . . . . . . .  2

Statement of the Facts. . . . . . . . . . . . .  5

Summary of the Arguments . . . . . . . . . . . .  7

Argument 1.A.  . . . . . . . . . . . . . . . .  9

Argument 1.B.  . . . . . . . . . . . . . . . .  13

Argument 1.C.  . . . . . . . . . . . . . . . .  16

Argument 1.D.  . . . . . . . . . . . . . . . .  20

Conclusion  . . . . . . . . . . . . . . . . .  21

Certificate of Service. . . . . . . . . . . . .  22

# TABLE OF CITATIONS

Anderson v. Tiemann, 182 Neb 393 (1967) . . . . . . . .  4, 14

Board of Pardons v. Allen, 482 U.S. 369 (1987). . . . . .  4, 18

California v. Morales, 514 U.S. 499 (1995) . . . . . .  3, 9

C.B.& Q. RR. Co. v. Chicago, 166 U.S. 226 (1897) . . . .  4, 19

Collins v. Youngblood, 497 U.S. 37 (1990) . . . . . . .  3, 9

Daniel v. Fulwood, 766 F.3d 57 (D.C. Cir. 2014) . . . .  12

Dent v. West Virginia, 129 U.S. 114 (1889) . . . . . .  4, 18

Ditter v. Nebr. Bd. of Parole, 11 Neb.App. 473 (2002) . .  4, 14, 19

Doe v. Board of Regents, 280 Neb 492 (2010). . . . . .  2, 12

Garner v. Jones, 529 U.S. 244 (2000) . . . . . . . .  3, 9

Greenholtz v. Inmates, 442 U.S. 1 (1976) . . . . . . . 4, 8, 16-18

Mathews v. Eldridge, 424 U.S. 319 (1976) . . . . . . . 17

Mooney v. Holohan, 294 U.S. 103 (1935). . . . . . . . 4, 19

Moore v. Bd. of Parole, 12 Neb.App. 525 (2004) . . . . . 3, 4, 9, 14, 16-17

Rafert v. Meyer, 290 Neb 219 (2015). . . . . . . . . 1, 2

Shepard v. Houston, 289 Neb 399 (2014). . . . . . . . 3, 9

State ex rel. Bruning v. R.J. Reynolds, 275 Neb 310 (2008) . 1

State v. Kibbee, 284 Neb 72 (2012) . . . . . . . . . 3, 10

State v. Moore, 274 Neb 790 (2008) . . . . . . . . . 3, 10, 13

VanAckeren v. Nebr. Bd. of Parole, 251 Neb 477 (1997). . . 2

Weaver v. Graham, 450 U.S. 24 (1981) . . . . . . . . 3, 9

Wolff v. McDonnell, 418 U.S. 539 (1974) . . . . . . . 4, 18-19


Neb.Rev.Stat. §29-2320 et seq. (Reissue 2008) . . . . . 3, 5, 13

Neb.Rev.Stat. §83-192 (Reissue 2014) . . . . . . . . 10-11

Neb.Rev.Stat. §83-1,111 (Reissue 1981). . . . . . . . 14

Neb.Rev.Stat. §83-1,111 (Reissue 2014). . . . . . . . 13

Neb.Rev.Stat. §83-1,114 (Reissue 2014). . . . . . . . 6, 18

Article I, §23, Nebraska Constitution . . . . . . . . 13-14, 19

Article V, §9, Nebraska Constitution . . . . . . . . 3, 13

Article II, Nebraska Constitution . . . . . . . . . 13

## STATEMENT OF JURISDICTION

i. The District Court's final Order dismissing this case was entered on October 27th, 2015 [T26-33].

ii. There were no motions filed tolling the time for appeal.

iii. The Notice of Appeal was filed by the Clerk of the District Court on November 6th, 2015 and was served after the weekend on or about November 11th, 2015, and the Appellant has paid the necessary filing fees for this appeal.

iv. Dismissal of a case is a final appealable order; Neb.Rev.Stat. §25-1902(1) and Neb.Rev.Stat. §25-1912 et seq.; State ex rel. Bruning v. R.J. Reynolds Tobacco Co., 275 Neb 310 (2008).

## STATEMENT OF THE CASE

a. The Appellant filed a Petition for Declaratory Judgment(s) asking for a statement of his constitutional rights under a number of Nebraska statutes relating to his parole eligibility and the parole process in Nebraska. [T1-12]

b. The issues tried below were whether the Petition states a claim for which relief can be granted.

c. The District Court below ruled that none of the Appellant's causes of action stated a claim for which relief can be granted. [T26-33]

d. An appellate court reviews a District Court's Order granting a Motion to Dismiss de novo, accepting all allegations in the complaint as true and drawing all reasonable inferences in favor of the non-moving party. Rafert v. Meyer, 290 Neb 219 (2015). To prevail against a motion to dismiss for failure for failure to state a claim, a plaintiff must allege sufficient facts to state a claim to relief that is plausible on its face. Id. The factual alle-

gations, taken as true, are nonetheless plausible if they suggest the exis-
tence of the element or claim; Doe v. Board of Regents, 280 Neb 492 (2010).
Statutory interpretation is a matter of law in connection with which an
appellate court has an obligation to reach an independent, correct conclusion
irrespective of the determination made by the Court below. VanAckeren v.
Nebr. Bd. of Parole, 251 Neb 477 (1997).

## ASSIGNMENTS OF ERROR

1. The District Court below erred in dismissing each of the four causes
of action in the Petition:

A. The ex post facto violation of changing the substantive parole
suitability standard under Neb.Rev.Stat. §83-1,114(1)(b).

B. The separation of powers violation from the Board's redetermination
of a judicial branch fact decision.

C. The violation of the Greenholtz Due Process holding by denying
a hearing.

D. The arbitrary denial of parole suitability under Neb.Rev.Stat.
§83-1,114(1)(d) without a hearing.

## PROPOSITIONS OF LAW

1. To prevail against a Motion to Dismiss for failure to state a claim,
a plaintiff must allege sufficient facts to state a claim for relief that is
plausible on its face.

Rafert v. Meyer, 290 Neb 219 (2015)

2. Factual allegations are plausible if they suggest the existence of the
claim.

Doe v. Board of Regents, 280 Neb 492 (2010)

3. It is the effect of the law, not the form, that determines whether there has been an ex post facto violation.

   Weaver v. Graham, 450 U.S. 24 (1981)

   Shepard v. Houston, 289 Neb 399 (2014)

4. Even subtle ex post facto violations are no more permissible than overt ones.

   Collins v. Youngblood, 497 U.S. 37 (1990)

   Shepard v. Houston, 289 Neb 399 (2014)

5. After the fact changes to an inmate's suitability for parole that create a significant risk of increasing the severity or duration of the punishment violate the ex post facto prohibition.

   Garner v. Jones, 529 U.S. 244 (2000)

   California v. Morales, 514 U.S. 499 (1995)

   Moore v. Nebr. Bd. of Parole, 12 Neb.App. 525 (Neb.App. 2004)

6. In Nebraska the severity of a sentence is determined by the minimum sentence.

   State v. Moore, 274 Neb 790 (2008)

7. Changing the punishment and inflicting a greater punishment than was imposed when the crime was committed is an ex post facto violation.

   State v. Kibbee, 284 Neb 72 (2012)

8. In Nebraska the power to impose a criminal sentence is reserved to the District Courts in the Judicial branch of government.

   Article V, §9, Nebraska Constitution

9. A prosecutor may appeal a sentence that depreciates the seriousness of the offense or promotes disrespect for the law as being too lenient.

   Neb.Rev.Stat. §29-2320 et seq. (Reissue 2008)

10. Parole Board "reviews" are not "hearings."

   Moore v. Nebr. Bd. of Parole, 12 Neb.App. 525 (Neb.App. 2004)

11. There is no appeal from a Board of Parole "review."

   Ditter v. Nebr. Bd. of Parole, 11 Neb.App. 473 (Neb.App. 2002)

12. The Legislature is not authorized to delegate judicial powers to executive branch officials without an appeal process.

   Anderson v. Tiemann, 182 Neb 393 (1967)

13. The expectancy of parole provided in Neb.Rev.Stat. §83-1,114 is entitled to some measure of constitutional protection.

   Greenholtz v. Inmates, 442 U.S. 1 (1976)

   Board of Pardons v. Allen, 482 U.S. 369, 373-4 (1987)

14. The touchstone of Due Process is protection of the individual against arbitrary action of the government.

   Wolff v. McDonnell, 418 U.S. 539 (1974)

   Dent v. West Virginia, 129 U.S. 114 (1889)

15. Violations of a state constitution violate the 14th Amendment's Due Process clause.

   Mooney v. Holohan, 294 U.S. 103 (1935)

   C.B.& Q. RR. Co. v. Chicago, 166 U.S. 226 (1897)

4

## STATEMENT OF THE FACTS

On 8/22/1986, the Appellant was sentenced in the District Court of Gage County, Nebraska, to an indeterminate term of life for each of three counts of Second Degree Murder (Neb.Rev.Stat. §28-304) and not less than 6 nor more than 20 years on each of two counts of using a firearm to commit a felony (Neb.Rev.Stat. §28-1205) [T14-15]. During 1986, Neb.Rev.Stat. §28-105 provided a minimum sentence of 10 years for the Class IB felony of Second Degree Murder and when a life sentence was imposed without expression of a minimum term for Second Degree Murder, the statutory 10 year minimum applied for parole eligibility. Under the good time law that applies to the Appellant, he became eligible for parole on January 17th, 2015 [T16-17]. Appellant's sentence was NOT appealed by the prosecutor pursuant to Neb.Rev.Stat. §29-2320 et seq., which provides the process for modifying a sentence that does NOT adequately "reflect the seriousness of the offense" or fails "to promote respect for the law"; see, §29-2322(3)(c). Although the Appellant appealed his sentence as "excessive" the Nebraska Supreme Court summarily affirmed that sentence.

Prior to reaching his parole eligibility date, a number of state statutes were amended relating to the minimum sentence for Second Degree Murder and parole procedures [T3-4, ¶¶15-20]. In 1995, Neb.Rev.Stat. §28-105 was amended to increase the minimum sentence for Second Degree Murder to 20 years from its prior 10 years. Late in 1986, Neb.Rev.Stat. §83-192 was amended to change the Board's "review" schedule and included:

> The review schedule shall be based on court-imposed sentences
> or statutory minimum sentences, whichever is greater.
>
> Neb.Rev.Stat. §83-192(1)(f)(v) (Reissue 2015)

5

In response to these statutory changes, the Board implemented a number of policy changes [T5-7, ¶¶27-37]. These Board policy changes show that the Board's consideration of offenders serving time for Second Degree Murder had been unrelated to the minimum sentence imposed or required by state statutes. Significant to the Appellant, the 1995 Board Policy C-2 [T6, ¶32] requires the Appellant to serve 10 years for each count of Second Degree Murder before the Board would consider him eligible for parole. This Board policy completely ignores statutory good time credits earned by the Appellant and acts as an increase to the minimum sentence imposed upon the Appellant.

As a result of an 8/7/2014 Board "review" the Board "deferred" the Appellant to an August 8th, 2015 "review" rather than scheduling a "hearing" [T18] based upon Neb.Rev.Stat. §83-1,114(1)(b)&(d).

Neb.Rev.Stat. §83-1,114(1) provides the Board shall order the release of an eligible offender unless it is of the opinion that his or her release should be deferred because: ...

> (b) His or her release would depreciate the seriousness of his or her crime or promote disrespect for the law; ...

> (d) His or her continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his or her capacity to lead a law-abiding life when released at a later date.

Neb.Rev.Stat. §83-1,114(1) (Reissue 2014)

Upon reaching his parole eligibility date on January 17th, 2015, the Appellant filed this suit for a declaration of his rights to procedural due process, his right to not be subjected to an ex post facto increase in the

severity and duration of his sentence, and his right to enforce the separation of powers. See, [T10-12, ¶¶A-D]. Appellant's Petition requested a discovery order to gather evidence to show not only a substantial risk of, but actually had, increased the measure of punishment from the statutory changes and the Board's policy and procedure changes to determinations of parole suitability [T7-8, ¶39].

The Appellees filed a Motion to Dismiss [T23-24] for failure to state a claim. Following a hearing [4-14] and briefing, the District Court dismissed the Appellant's case [T26-33] by finding it "failed to state any plausible claim for relief...." [T32]. This timely appeal followed.

## SUMMARY OF THE ARGUMENTS

1. The District Court erred in dismissing each of the four causes of action:

A. The Court failed to consider the 1995 change to Neb.Rev.Stat. §28-105 was the substance of the standard the Board applied to the Appellant in Neb. Rev.Stat. §83-1,114(1)(b). The effect of this substantive change in the parole suitability standards are ex post facto violations because they inflict a more severe punishment than was imposed when the Appellant's crime was committed. The factual allegations about the Board's policies are adequate to suggest the Board routinely inflicts a more severe and increased measure of punishment than actually imposed.

B. The Judicial branch determined that the Appellant's sentence DID NOT depreciate the seriousness of his Crime or promote disrespect for the law. The separation of powers prohibits that judicial power (whose procedure is adequately protected by an appeal process) from being delegated to an Executive branch agency without also providing the procedural protection of an appeal.

The Board's use of the public's perception of an "adequate" sentence as a criteria for parole suitability necessitates a public hearing to prevent arbitrary decision making under the Due Process protection.

C. The District Court's reliance upon the conclusion from Greenholtz v. Inmates, 442 U.S. 1 (1976), was erroneous because the procedural circumstances upon which Greenholtz was based are no longer in effect; yet the Nebraska statute that the Greenholtz Court found created a liberty interest entitled to some protection has NOT been changed. Nebraska's current parole procedure violates the Due Process that WAS available and WAS key to the Greenholtz Court's conclusions. The Board's extending the duration and increasing the severity of the Appellant's punishment without a hearing and its consequent appeal, violate the guarantee of an appeal in a criminal case under Art. I, §23 of the Nebraska Constitution. This state constitutional violation violates the 14th Amendment's Due Process clause.

D. The factual allegations show a plausible case for arbitrary denial of parole suitability under Neb.Rev.Stat. §83-1,114(1)(d). The denial of a hearing eliminates the process of law that is due in Nebraska (a Petition in Error) to challenge that arbitrary fact-finding. The issue is the Board's procedures implemented since the Greenholtz decision, which now take away the process of law required by the Due Process clause. This arbitrary process is how Nebraska's prisons were purposely overcrowded to satisfy the desires of Department of Corrections officials.

1.A. The District Court erred in failing to find the Petition stated a plausible claim for the Board's imposing an ex post facto change in parole suitability standards.

The District Court's reasoning on this ex post facto claim in the last paragraph of [T30] is that since Neb.Rev.Stat. §83-1,114(1)(b) was enacted in 1969, prior to the Appellant's sentencing, there can be no ex post facto violation. The District Court's error was to place form over substance.

It is the effect of the law, not the form, that determines whether there has been an ex post facto violation; Weaver v. Graham, 450 U.S. 24, 31 (1981) cited in Shepard v. Houston, 289 Neb 399, 412 (2014). Even subtle ex post facto violations are no more permissible than overt ones; Collins v. Youngblood, 497 U.S. 37, 46 (1990) also cited in Shepard, supra. After the fact changes to an inmate's suitability for parole that create a significant risk of increasing the severity or duration of the punishment violate the ex post facto prohibition; Garner v. Jones, 529 U.S. 244 (2000) and California v. Morales, 514 U.S. 499 (1995), both of which are cited to in Moore v. Bd. of Parole, 12 Neb.App. 525 (Neb.App. 2004). However, Moore is not controlling because it dealt with a procedural issue rather than the substantive issue of parole suitability standards brought in the Appellant's case.

The factual allegation is that the Board of Parole is using the statutory 20 year minimum sentence (presumably less good time) enacted in 1995 to determine that the Appellant's 10 year minimum sentence (again presumably less good time) is not sufficient and would depreciate the seriousness of his crime and promote disrespect for the law if he were released on parole. The Board feels authorized

to impose this higher standard of parole suitability through the mandatory language in Neb.Rev.Stat. §83-192(1)(f)(v) which says:

> The review schedule shall be based on court-imposed sentences or statutory minimum sentences, whichever is greater.
>
> Neb.Rev.Stat. §83-192(1)(f)(v) (Reissue 2014)

Here the Board simply applies the new statutory minimum of 20 years rather than the 10 year minimum sentence imposed on the Appellant. Since no District Court can lawfully impose a minimum sentence less than the statutory minimum, what else could the "whichever is greater" phrase in §83-192(1)(f)(v) mean?

In Nebraska the severity of a sentence is determined by the minimum sentence; State v. Moore, 274 Neb 790, 793-796 (2008). Imposing a 10 year increase for the Appellant's parole suitability determination would, if true, inflict a greater, more severe punishment than imposed when the Appellant's crime was committed and, therefore, would be an ex post facto violation. See, State v. Kibbee, 284 Neb 72, 83-84 (2012)(Description #3 of ex post facto violations). Thus, applying the 1995 statutory change increasing the 10 year minimum sentence to the 20 year minimum sentence could effect an ex post facto change to the parole suitability standards.

The Petition's allegations raise the fact question of whether the Board is actually applying the 1995 20 year minimum standard for parole suitability to the Appellant (and others) or not. As a matter of law, however, the District Court should have found that, if the Board was actually doing this, it would be an ex post facto violation.

But the Petition goes far beyond such a bare allegation. The allegation's of the Board's policies [T7-9] show the Board has a history of imposing arbitrary

conditions upon parole suitability for Second Degree Murder greater than those authorized by statutory law:

In 1983 the Board required Second Degree Murder offenders to serve 10 years without good time reductions before even being considered for "programming" which the Board (and the Department of Corrections) required to be completed before being paroled. [T5, ¶28]. That policy increased the severity of the minimum sentence by nearly four years simply by ignoring good time. See, [T6, ¶29].

The 1996 Board policy for Second Degree Murder [T6, ¶30] ignored good time and jail time credits mandated by statute; see, Neb.Rev. Stat. §83-1,106.

The Board's 1999 policy for   Second Degree Murder [T6, ¶32] again ignored good time and jail time credits but also increased the time from the 1995 increase in the minimum to 20 years [T7, ¶¶33-35]. The Board now required 15 years before parole consideration. There is no legal basis to withhold parole consideration for 15 years. This is an arbitrary determination of parole suitability.

Since 2003 the Board's policy for Second Degree Murder cases is to "review" cases in accordance with Neb.Rev.Stat. §83-192(9). [T7, ¶36]. That statute has been renumbered and is now §83-192(1)(f)(v) (Reissue 2014).

These written policies show the Board's arbitrary disregard for statutory law regarding good time and jail time credits.

The Appellant sought a discovery order to show the consequences of these statutes, the Board's policies, and their application to the Appellant and

others similarly situated. [T7-8, ¶39]. The discovery sought a list of all offenders with a sentence for Second Degree Murder since 1970. That list should include the Inmate's name and inmate number, the minimum and maximum sentence imposed by the Court, the Good Time lost (if any), the sentence begin date, parole eligibility date, their first parole hearing date, and the date they were paroled (or indicate they have not been paroled). It is the Appellant's observations over the last nearly 30 years that make him confident that this list would expose a routine increase in the duration of punishment for these offenders. At the very least these allegations suggest the existence of these ex post facto violations.

The District Court erred in dismissing this first cause of action because the factual allegations, taken as true, are nonetheless plausible because they suggest the existence of the alleged ex post facto violations. See, Doe v. Bd. of Regents, 280 Neb 492, 506 (2010) for the standard for a Motion to Dismiss. Compare this to Daniel v. Fulwood, 766 F.3d 57 (D.C. Cir. 2014); where the Court not only discusses the standards for a Motion to Dismiss but also the ex post facto considerations applied to parole suitability standards.

This case should be reversed and remanded with instructions that the first cause of action states a plausible claim for the violation of the Appellant's right not to be subjected to an ex post facto change in parole suitability standards.

1.B. The District Court erred in failing to find that the Board's use of Neb.Rev.Stat. §83-1,114(1)(b) usurps the Judicial branch power to determine the severity of a criminal offender's sentence, violating the constitutional separation of powers.

The District Court found that Neb.Rev.Stat. §83-1,114(1)(b) did not violate the separation of powers [T31]. But the District Court appears to have misunderstood the claim because it also said: "The increase in the minimum sentence for second degree murder was enacted in 1995." This separation of powers claim does not involve the 1995 increase to the minimum sentence for second degree murder; see [T11, ¶B].

In Nebraska the power to impose a criminal sentence is reserved to the District Courts in the Judicial branch of government; see, Art. V, §9, "... and pass such sentence as may be prescribed by law." The minimum sentence imposed determines the severity of the punishment; State v. Moore, supra. A defendant is guaranteed an appeal of the criminal case decision in Art. I, §23 of the Nebraska Constitution. Then Neb.Rev.Stat. §29-2320 et seq. (Reissue 2008) provides the prosecutor the power to appeal the sentence imposed if they feel it depreciates the seriousness of the offense or promotes disrespect for the law; see §29-2322(3)(c). That determination also gets made by the Judicial branch and Art. II of the Nebraska Constitution forbids the Executive branch Board of Parole from exercising that power.

It is true that since 1969, Neb.Rev.Stat. §83-1,114(1)(b) allowed the Board of Parole to increase the severity of an offender's punishment by denying or defering parole for precisely the same reasons the judicial branch determined in §29-2322(3)(c). But prior to the 2003 change to Neb.Rev.Stat. §83-1,111

the Board made these decisions in "hearings." See, Neb.Rev.Stat. §83-1,111

(Reissue 1981) described in <u>Moore v. Bd. of Parole</u>, supra, 12 Neb.App. at

532 [T9-10]. A "hearing" before the Board was a constitutionally significant

proceeding in Nebraska because an appeal process; through the Petition in

Error statutes, Neb.Rev.Stat. §25-1901 et seq. (Reissue 2008); was then available.

Since the 2003 change to §83-1,111 the Board is no longer <u>required</u> to

make such determinations in "hearings." Instead the Board holds "reviews";

see, <u>Id.</u>, 12 Neb.App. at 532-533 [T10]. There is no appeal process from a

Board "review"; <u>Ditter v. Nebr. Bd. of Parole</u>, 11 Neb.App. 473 (Neb.App. 2002).

Therefore, when the Board defers or denies parole to an eligible offender

for the reason set out in §83-1,114(1)(b) it extends the duration of and increases

the severity of the punishment of that offender, remaking the Judicial branch

decision without any appeal process. This violates the guarantee of Art. I, §23.

[As described in 1.C., infra, this is also a Due Process violation.]

Regarding the separation of powers, the Nebraska Supreme Court has said the

Legislature is not authorized to delegate judicial powers to executive branch

officials without an appeal process; see, <u>Anderson v. Tiemann</u>, 182 Neb 393, 403

(1967). Art. I, §23 makes an appeal process particularly necessary where a

judicial power in a criminal case is concerned.

Note that the Appellant is NOT attacking Neb.Rev.Stat. §83-1,111 as violating

the separation of powers. That statute gives the Board discretion to provide

"hearings" which would preserve an offender's right to appeal. In addition, note

that the Board might deny or defer parole for one of the other reasons set out

in Neb.Rev.Stat. §83-1,114(1) without necessitating an appeal. However, the

Board's failure to assert §83-1,114(1)(b)'s criteria once an offender reaches

14

parole eligibility might render a later finding of that "fact" arbitrary.

The facts of the Appellant's criminal case present a unique demonstration of arbitrary fact-finding in the Board's procedures. In the Board's August, 2015 "review" of the Appellant's case the Board informed me they received letters indicating "public opposition" to my release on parole. This raised the question: How does the Board know if this "public opposition" is based on facts, just urban legend, or Internet rumor? The only way to determine this would be to hold a public hearing and have those in opposition show up and describe why they are opposed.

It is likely to be hard to gauge the public reaction to any criminal case some thirty years later. In my case codefendant Ken Johnson hung himself in the Gage County Jail before a trial could take place. In the local press that left me as the focus of public anger. How many of those in "opposition" understand why there are three counts of Second Degree Murder but only two gun charges? How many know who fired the fatal gunshots? I don't mean to sound as if I am not taking responsibility for what I did or didn't do, but a public hearing would be the place and process for educating those members of that "public opposition" as to what the facts are. Surely the Legislature did not enact §83-1,114(1)(b) to permit ignorant angry mobs to usurp the Judicial branch function of imposing "just" sentences. If the Board's decision under §83-1,114(1)(b) is based upon "public opposition" then a hearing must be held to determine if that "public opposition" is fact based or not. Anything less would render such a "fact" finding arbitrary by definition.

This second cause of action was both facial (because the procedures the statutes allow the Board to follow can be used against any offender eligible for parole)

and as applied to the Appellant (because the Board DID follow procedures improperly delegated to the Executive branch Board of Parole). The District Court erred in finding no basis in law or fact for this cause of action; the delegation of a Judicial branch power without an appeal process speaks for itself. This cause of action should be remanded back to the District Court.

1.C. The District Court erred in dismissing the third cause of action by relying upon Greenholtz v. Inmates, 442 U.S. 1 (1979) to find that Nebraska's current parole procedures did NOT violate Due Process.

The District Court's Order dismissing this cause of action relied upon the conclusion of the U.S. Supreme Court in Greenholtz, supra [T31-32]. The District Court recited, "The Nebraska procedure affords an opportunity to be heard, and when parole is denied it informs the inmate in what respect he falls short of qualifying for parole; this affords the process that is due under these circumstances. The Constitution does not require more." This quote comes directly from Greenholtz, supra, 442 U.S. at 16. But then the District Court misrepresents the Greenholtz decision, continuing, "Since the board of parole's decision at its initial review hearing is one that must be made largely on the basis of the inmate's file, this procedure adequately safeguards against serious risks of error and thus satisfies due process." [T32] This is NOT on page 16 of Greenholtz. The District Court modified the following language from Greenholtz:

> Since the decision is one that must be made largely on the basis of the inmate's files, this procedure adequately safeguards against serious risks or error and thus satisfies due process.
>
> Greenholtz, supra, 442 U.S. at 15

The District Court made two changes: (1) "decision" becomes "board of parole's

decision"; and (2) he inserts, "at its initial review hearing". Note how the District Court inserted the word, "hearing," when in fact the Appellant received only a "review." That is a constitutionally significant difference as I describe below.

Furthermore, the District Court misrepresented the Appellant's claim when he quoted from Moore v. Bd. of Parole, supra, '... the Petitioner's "argument that he has a protected state-created liberty interest in being paroled is without merit."' Id. at 539. If Moore had argued that he had a liberty interest in being paroled, he was incorrect. But that is not the Appellant's claim. The Appellant does NOT claim he has a right to be paroled. [7:15-8:14]. The Appellant claims only a Due Process right to adequate procedures to determine his parole suitability.

The claim the Appellant brings was NOT decided by the U.S. Supreme Court in Greenholtz. The procedures Nebraska follows have changed since Greenholtz. The Greenholtz Court found, "Two types of hearings are conducted: initial parole review hearings and final parole hearings." Greenholtz, supra, 442 U.S. at 4 (emphasis added). The Court also said, "However, since the Nebraska Parole Board provides at least one and often two hearings every year to each eligible inmate, we need only consider whether the additional procedures mandated by the Court of Appeals are required under the standards set out in Mathews v. Eldridge, [424 U.S. 319] at 335...." Greenholtz, supra, at 14 (emphasis added). But Nebraska no longer provides "hearings" until after the Board has made a favorable parole suitability finding. The 2003 change to Neb.Rev.Stat. §83-1,111 replaced "hearing" upon parole eligibility with only "reviews" and changed the legal landscape. Therefore, the Greenholtz Court's conclusion that Nebraska's parole procedures are adequate can no longer be relied upon.

Nebraska's parole procedures must meet the requirements of Due Process. The Greenholtz Court found that Neb.Rev.Stat. §83-1,114 created a liberty interest in the process to determine parole suitability; Greenholtz, supra, at 12 (...the expectancy of parole provided in this statute is entitled to some measure of constitutional protection.) See also, Board of Pardons v. Allen, 482 U.S. 369, 373-374 (1987). The touchstone of Due Process is protection of the individual against arbitrary action of the government. Wolff v. McDonnell, 418 U.S. 539, 558 (1974) citing Dent v. West Virginia, 129 U.S. 114, 123 (1889).

When the Board denies or defers parole to an eligible offender under §83-1,114(1)(b) this increases the duration and severity of the offender's punishment by extending their minimum sentence. This has constitutional consequences.

First, the Board's denial of parole suitability based upon §83-1,114(1)(b) is arbitrary. Both the Legislative branch (by enacting statutory sentencing ranges) and the Judicial branch (through imposition of sentences and appeals thereof) have made the determination of whether or not the offender's sentence depreciates the seriousness of their offense or promotes disrespect for the law; see Neb.Rev. Stat. §29-2320 et seq. described in Argument 1.B. above. The Board possesses no more evidence about the offense than the sentencing court did. Even public opinion or opposition is available at the time of sentencing and appeal. Therefore, defering or denying parole suitability under §83-1,114(1)(b) to an eligible offender is equivalent to another sentencing of the offender with a different result. How could such a decision be anything but arbitrary if there was no question of the adequacy of the punishment imposed by the sentencing court? A hearing is required to satisfy the minimum requirements of Due Process to protect against such arbitrary decisions. The Appellant was NOT afforded that minimum constitu-

tional protection, nor, I believe, is any other parole eligible offender denied or defered under §83-1,114(1)(b).

Second, the Nebraska Constitution guarantees a procedure to avoid the imposition of arbitrary decisions in sentencing. Art. I, §23 guarantees an appeal in a criminal case. Extending the duration of an offender's minimum sentence and increasing the severity of his punishment resentences that offender and entitles them to an appeal of that decision. This is comparable to the taking of good time credits in Wolff v. McDonnell, supra, which requires a hearing and appeal process.

An appeal is only available to a parole eligible offender when a hearing has been provided; see the Petition in Error process described in Argument 1.B., supra. The Appellant was denied this appeal because he was only provided with a review; see, Ditter, supra. Therefore, the Appellant's right to an appeal, from the extension of the duration and increased severity of his punishment was violated by the Board. This violation of the State Constitution violates the 14th Amendment's Due Process clause; see, Mooney v. Holohan, 294 U.S. 103, 112-113 (1935) citing C.B.& Q. RR. Co. v. Chicago, 166 U.S. 226, 233-234 (1897). Here the State has clothed its agent, the Board of Parole, with the power to annul or evade this state constitutional guarantee.

This dismissal of the third cause of action should be reversed for a determination by the District Court. Either the Board's denial or deferal of parole suitability using §83-1,114(1)(b) is unconstitutional on its face OR was unconstitutional as applied to the Appellant because the Board did NOT provide a hearing. The Petition adequately states a claim for either determination by the Court below.

1.D. The District Court erred in dismissing the fourth cause of action based on Greenholtz, supra and Moore v. Bd. of Parole, supra.

As in Argument 1.C. above, the District Court's rejection of this cause of action was based on the erroneous reliance on the Greenholtz conclusion which is no longer factually supported by the procedures currently adopted and followed by the Board. [T31-32]. The Appellant has made no claim to a right to be paroled.

The Appellant has a right to a process that is not arbitrary. The factual allegations in the Petition show that the Board failed or refused to consider the Appellant's ability to obtain the substance abuse treatment through the Veteran's Administration program.

It is one thing for the Board to decide that an offender or the Appellant needs substance abuse treatment. I am not challenging that authority. However, when the facts show that requirement can be satisfied, it is wrong for the Board to defer an eligible offender under §83-1,114(1)(d) without a hearing. Such a denial or deferal extends the severity and duration of the offender's punishment and that consequence requires an appeal process guaranteed by Art. I, §23. Again, the problem here is not the Board's choice to require substance abuse treatment that is the problem. The problem is that they chose to make that determination in a "review" while the Appellant was eligible for parole. The consequences of their decision require a hearing to guarantee the right of appeal. The failure to provide that hearing process violates the State Constitution and, therefore, the 14th Amendment's Due Process clause, as described in 1.C. above.

The ability of the Department of Corrections to control which, and how many, inmates received treatment allowed them to control the parole function and overcrowd the prison system to suit their needs and desires. The Legislature's enactment

20

of Neb.Rev.Stat. §83-1,110.01 was aimed at ending this subterfuge. Not providing a hearing permits this subterfuge to continue. Did the Board consider the options available to this Appellant or does the Board (containing former Dept. of Corrections officials) simply wish to ignore §83-1,110.01 to continue the Department's subterfuge?

The District Court's dismissal of the fourth cause of action should be reversed and remanded with instructions that (1) the conclusion from Greenholtz only applies when hearings are provided by the Board and (2) the Court must address the fourth cause of action and determine whether §83-1,114(1)(d) can be or has been applied arbitrarily to the Appellant, resulting in the violation of the Appellant's right to the Due Process of Law.

## CONCLUSION

The dismissal of the Appellant's Petition must be reversed and remanded to the District Court. The Petition adequately makes factual allegations which plausibly suggest the violation of the Appellant's rights by the state statutes and Board of Parole actions.

Respectfully submitted,

David H. Jacob, pro se
P.O. Box 2500-37269
Lincoln, NE 68542-2500

21

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the Appellant's Brief was placed into the possession of Dept. of Corr. Svcs. staff for mailing by first-class, postage prepaid U.S. mail to: Kyle Citta, Assistant Attorney General, 2115 State Capitol, Lincoln, NE  68509-8920 on this 20th day of January, 2016.

David H. Jacob

22

FILED

JUN 23 2016

NEBRASKA SUPREME COURT
COURT APPEALS

## IN THE NEBRASKA COURT OF APPEALS

DAVID H. JACOB,

                             Appellant,

    vs.

ROSALYN COTTON, Chairperson,

NEBR. BOARD OF PAROLE,

                   Appellees.

ON APPEAL FROM

THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA

The Honorable Andrew R. Jacobsen, District Court Judge

REPLY BRIEF OF THE APPELLANT

David H. Jacob, pro se
P.O. Box 2500-37269
Lincoln, NE 68542-2500


000072173NSC

## TABLE OF CONTENTS

Table of Citations . . . . . . . . . . . i

Propositions of Law. . . . . . . . . . . 1

Arguments

    1st Assignment of Error . . . . . . . . 2

    2nd Assignment of Error . . . . . . . . 5

    3rd Assignment of Error . . . . . . . . 6

    4th Assignment of Error . . . . . . . . 7

Certificate of Service. . . . . . . . . . 11

## TABLE OF CITATIONS

Board of Pardons v. Allen, 482 U.S. 369 (1987) . . . . 9

Garner v. Jones, 529 U.S. 244 (2000). . . . . . . . . 1, 4

Greenholtz v. Inmates, 442 U.S. 1 (1979). . . . . . .1, 7, 9, 10

Pratt v. Board of Parole, 252 Neb 906 (1997). . . . . . 1, 3

Shepard v. Houston, 289 Neb 399 (2014) . . . . . . . . 1, 2

State v. Moore, 274 Neb 790 (2008) . . . . . . . . . 1, 5

Swarthout v. Cooke, 562 U.S. 216 (2011) . . . . . . . 1, 9, 10

Weaver v. Graham, 450 U.S. 24 (1981) . . . . . . . . 1, 2

# PROPOSITIONS OF LAW

1. It is the effect of the law, not the form, that determines whether there has been an ex post facto violation.

> Weaver v. Graham, 450 U.S. 24 (1981)

> Shepard v. Houston, 289 Neb 399 (2014)

2. After the fact changes to an inmate's suitability for parole that create a significant risk of increasing the severity or duration of the punishment violate the ex post facto prohibition.

> Garner v. Jones, 529 U.S. 244 (2000)

3. In Nebraska the severity of the sentence is determined by the minimum sentence.

> State v. Moore, 274 Neb 790 (2008)

4. Determining parole "eligibility" is a ministerial act.

> Pratt v. Board of Parole, 252 Neb 906 (1997)

5. Nebraska parole statutes create a "liberty interest" entitled to some constitutional protection.

> Greenholtz v. Inmates, 442 U.S. 1 (1979)

6. When a state creates a liberty interest, the due process clause requires fair procedures for its vindication.

> Swarthout v. Cooke, 562 U.S. 216 (2011)

1. The Ex Post Facto claim (Assignment of Error #1)

The Appellee's argument regarding the First Assignment of Error is inadequate and attempts to mislead the Court. Their first mistake is to "restate" this assignment of error into something it is not. [The Appellee has even "restated" the Parole Board's decision as relying upon 83-1,114(1)(c) rather than 83-1,114(1)(d) on page 10 of their Brief.] Both the Appellee and the Court below tried to restrict the ex post facto claim to the form of Neb.Rev.Stat. §83-1,114(1)(b). That is error. The ex post facto violation comes from the <u>effect</u> of Neb.Rev.Stat. §28-105 and §83-192. The changes to these statutes allows, if not requires, the Board to violate the ex post facto prohibition. It is the <u>effect</u> that matters; <u>Weaver v. Graham</u>, 450 U.S. 24, 31 (1981) and <u>Shepard v. Houston</u>, 289 Neb 399, 412 (2014).

Neb.Rev.Stat. §83-1,114(1)(b) merely puts a "name" or "label" on the parole suitability standard to be used by the Board. Whether or not an offender's "release would depreciate the seriousness of the offense or promote disrespect for the law" is a generic label not tied to any one offense. Surely the suitability standard under that name is different for a common burglary than for a second degree murder offense. The name of the suitability standard did not change but the actual value for the Appellant's offense did change.

So what is the actual suitability standard for a second degree murder case? Here the Appellant's claim is that the suitability standard has been legislatively changed and increased. The Legislature accomplished this change to the  suitability standard by doing two things: (1) changing §28-105's minimum sentence for second degree murder from 10 years to 20 years in 1995;

and (2) using mandatory language when changing §83-192 to require the Board to use that greater statutory minimum sentence to determine an offender's "suitability" for release on parole.

Under §83-192, if the Board finds an offender not "suitable" it provides only "reviews." Once an offender reaches their "eligibility;" which is just a ministerial determination, see Pratt v. Board of Parole, 252 Neb 906, 911 (1997); it is the Board's "suitability" determination that controls whether the offender continues to receive only "reviews."

The Appellee makes no mention of the change to §83-192 or the Board's criteria for making suitability determinations. Nor does the Appellee have any explanation that could justify using the greater of the minimum sentence set out for an offense rather than the minimum sentence actually imposed by the court. By law that minimum sentence imposed must be greater than or equal to the minimum sentence set out for the crime in statute. There can be no other use for that mandatory language in §83-193 except to require the use of a later increase in the statutory minimum sentence. Under the new mandatory language in §83-192 a second degree murder offender is only going to get "reviews" because the Board's suitability decision is now dictated by the greater statutory minimum sentence of 20 years. This is prima facie evidence of creating a "significant risk" of increasing the severity or duration of the punishment for second degree murder offenders such as the Appellant.

This is more than just a procedural change. The Petition alleges a substantive change has been made to the suitability standard for the offense of second degree murder and the Legislature has required that change to be used in the Board's suitability determinations. The Petition alleges that one can see

3

the effect of this substantive change by looking at the Board's changing policies and alleges that discovery will reveal the actual increase in punishment for second degree murder offenders in response to the Legislature's changes to §28-105 and §83-192.

The Board has not denied these claims; they have not yet filed an Answer to the Petition. Procedurally, the factual allegation that this new suitability standard of requiring 20 years rather than the prior 10 years for "suitability" for parole must be accepted by the Court as true. This was the District Court's error that requires reversal and remand of this claim.

The best evidence that the Appellee's "restatement" has misled them is that they confuse parole "eligibility" with the parole "suitability" issue the Appellant brought to the Court below. The Appellee argues that "[t]he change in the criminal penalty did not include any legislative changes in parole eligibility."[p.10 of the Appellee's Brief.] But the issue raised is NOT "eligibility" it is the change in the "suitability" standard and the Legislative mandate to apply that increase in "suitability" determinations even if it is greater than the minimum sentence actually imposed by the sentencing court. That Legislative increase in the "suitability" standard has the <u>effect</u> of increasing the risk of, if not mandating, the increase in severity and duration of the punishment imposed. Legislative changes that create such effects violate the ex post facto clause; <u>Garner v. Jones</u>, 529 U.S. 244 (2000). It is §83-192's mandatory language that is the culprit that the Appellee chooses to ignore.

2. The Separation of Powers claim (Assignment of Error #2)

The Appellee's argument on the Second Assignment of Error fails to respect the uniqueness of substantive Nebraska law. Instead, the Appellee once again confuses this with a parole release decision; see, "...the Parole Board's denial of parole...." [p.11, Appellee's Brief]. This issue is NOT about "release on parole."

In Nebraska, the severity of the punishment imposed on offenders is a substantive power reserved for the Judicial Branch; see, Article V, §9 of the Nebraska Constitution. This judicial branch power is subject to review by the Courts under the standard set out in Neb.Rev.Stat. §29-2322(3)(c) and Article I, §23 of the Nebraska Constitution. It is the Appellant's claim that once an offender has reached their parole eligibility date (a ministerial calculation from the minimum sentence imposed) any Parole Board decision that finds the offender unsuitable for parole necessarily increases the severity and duration of the punishment imposed. Again, perhaps uniquely in Nebraska law, the severity of the punishment is determined by the minimum sentence imposed; State v. Moore, 274 Neb 790, 793-6 (2008). That Parole Board decision is no different than if the District Court sentencing that offender had imposed a greater minimum sentence.

The standard for parole suitability found in §83-1,114(1)(b) is the very same standard already applied by the Courts in Neb.Rev.Stat. §29-2322(3)(c) in determining the severity of the punishment imposed. Once the Courts exercise the power the state constitution exclusively sets out for that branch, no other branch of government can be given that power. The Legislature is not authorized to permit the Executive branch Board of Parole to retry the facts

of the case and then exercise that same substantive judicial power under the same standard of evaluation.

Even if the Legislature could delegate that judicial fact-finding power to the Executive branch Board of Parole, they would still have to respect the state constitutional guarantee of the right to appeal that judicial power decision found in Article I, §23. Since such an appeal is only guaranteed when the Board holds a "hearing," the Legislature's failure to require the Board to hold "hearings" for all eligible offenders makes even a delegation of this power improper and inadequate.

3. The Procedural Due Process claim (Assignment of Error #3)

The Third Assignment of Error is about the procedural Due Process aspect of the second claim regarding the suitability standard under §83-1,114(1)(b). The Appellee has mashed both the Third and Fourth Assignments of Error into one so I will address some of their errors in the next argument. Suffice it to say, for now, that all their arguments about "no right to parole" are a misrepresentation of the issue.

As in the Second Assignment of Error we are dealing with the Board's use of the suitability standard set out in §83-1,114(1)(b). Using this standard to deny an eligible offender a hearing will increase the severity and duration of the punishment imposed. This is uniquely Nebraska's substantive law as I described above. And, as above, the uniqueness of Nebraska law requires that an offender is guaranteed an appeal for the imposition or increase to that severity of punishment; Art. I, §23, Nebraska Constitution.

The claim here is a procedural one. I am NOT saying the Board cannot find an offender unsuitable for parole. My claim is that Nebraska law, the Nebraska

Constitution, and the Federal Constitution's Due Process Clause requires that the offender's right to that appeal be respected.

Here my argument is that, procedurally, if the Board wants to find an offender unsuitable for parole under the standard set out in §83-1,114(1)(b) then the Board is, procedurally, required to do so in a "hearing" so that offender's right to an appeal is respected. Nebraska law provides a judicial appeal from a Board decision made in a "hearing;" the Petition in Error process. The process currently followed by the Board violates the Appellant's right to that appeal and, therefore, his right to the Due Process of Law.

Since the time of the Greenholtz decision; Greenholtz v. Inmates, 442 U.S. 1 (1979); the Nebraska Legislature has allowed Nebraska's parole process to change. The result of the changes to §83-192 and §83-1,111 are that no offender gets a parole "hearing" until after the Board has made the decision to release that offender on parole. This is done by restricting "hearings" to what are called "final hearings." But prior to that "final hearing" the Board sets a date that they will release that offender on parole; that is the date of the "final hearing." That release decision may change between the time the Board informs the offender of the date of that "final hearing" and when that "final hearing" actually occurs. Obviously, some offenders may do something stupid in that time period that causes the Board to change their mind. But as of right now the process being followed by the Board means that neither the parole suitability determination nor the release on parole determination is made as a result of a "hearing." That is a very significantly different process than was followed at the time of the Greenholtz decision.

It is this new and current process that I claim is legally inadequate,

leads to arbitrary decisionmaking (banned by the Due Process protection), and creates a significant risk of increasing the punishment imposed on offenders, and specifically violates the Appellant's right to the Due Process of Law. This case should be reversed and remanded with a clear statement of Nebraska's unique law.

4. The §83-1,114(1)(d) Due Process Claim (Assignment of Error #4)

The Fourth Assignment of Error is even more fact specific. It relates to the Board's decision that the Appellant needs substance abuse treatment under §83-1,114(1)(d). Neb.Rev.Stat. §83-1,110.01 allows the Board to require the Appellant to participate in such an approved treatment program as a condition of his release on parole. The factual allegation is that the Appellant is a veteran and the Veteran's Administration has just such an approved treatment program available for the Appellant. Without a "hearing" there is absolutely no evidence that the Board knows this or even considered it in making their decision. Again, the Board might deny this when they Answer the Petition.

Did the Board make an arbitrary decision without all the facts? Obviously, a "hearing" (the results of which could be judicially tested in the Petition in Error process) could make a showing of that determination's adequacy and I argue is required by the Due Process Clause of the 14th Amendment.

A.G.'s Misdirection about "The Right To Parole"

I want to address the A.G.'s misleading arguments about no "right to parole." The Federal Constitution does not require States to make or have a parole process. However, onces States do that and create sufficient statutory require-ments then the Due Process Clause requires those procedures to meet certain

requirements to prevent arbitrary decisionmaking.

The A.G.'s reliance on Swarthout v. Cooke, 562 U.S. 216 (2011) is misplaced. In Swarthout, the U.S. Supreme Court found that California statutes created a liberty interest in the parole process; Id., 562 U.S. at 220; because the statutes provide that the Board shall set a release date. But the Court also found that Cooke and the other inmates were allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons that parole was denied. California statutes then provided the prisoners the right to seek judicial review in a state habeas petition. The Court not only found that process to be adequate but also found that the Federal Constitution did NOT require the "some evidence" standard to be applied to the Board's decisionmaking.

The A.G. correctly recites Swarthout for the two step Due Process analysis, but gets the first step wrong. "We first ask whether there exists a liberty or property interest of which a person has been deprived;" Id., 562 U.S. at 219. The A.G. claims this first step fails for the Appellant. WRONG! The U.S. Supreme Court in Greenholtz, supra, 442 U.S. at 12, ruled that the interest in Nebraska's parole process set out in §83-1,114 was "entitled to some measure of constitutional protection." In Board of Pardons v. Allen, 482 U.S. 369, 373-4 (1987), the U.S. Supreme Court said Nebraska's statutory provision created a "liberty interest." This is the supreme law of the land until the U.S. Supreme Court overturns the Greenholtz decision. This Court is bound by that ruling.

The U.S. Supreme Court's decision that in Nebraska, as in California, the state parole statute(s) creates a liberty interest,then due process protections apply. "When, however, a state creates a liberty interest, the due

9

process clause requires fair procedures for its vindication...." Swarthout, supra, 562 U.S. at 220. Whether Nebraska's CURRENT procedures are adequate is the second step of the due process analysis.

Once again, the A.G. misrepresents the U.S. Supreme Court decision in Greenholtz, supra. The A.G. recites: "The Nebraska procedure affords an opportunity to be heard, and when parole is denied it informs the inmate in what respect he falls short of qualifying for parole; this affords the process that is due under these circumstances;" Greenholtz, supra, 442 U.S. at 16 (emphasis added). But the A.G. forgets or wants to hide just what "circumstances" the U.S. Supreme Court actually found about Nebraska's process.

The Greenholtz Court found that this "opportunity to be heard" was in a hearing for every parole eligible offender. See, Id., 442 U.S. at 14, "However, since the Nebraska Parole Board provides at least one and often two hearings a year to each eligible inmate...." The Greenholtz Court found Nebraska's process adequate only because eligible offenders were getting hearings. That is no longer Nebraska's current process and that is why the Appellant has brought this case to the Courts.

Greenholtz is still the supreme law of the land that Nebraska Courts must follow. Nebraska's parole statutes still create a liberty interest in the parole process. Nebraska's parole process must still meet the minimal requirements of the Due Process clause. But do the current procedures that provide no hearing whatsoever until after the Board has made the parole release decision still meet those minimal requirements. The Appellant claims that the Due Process guarantee requires Nebraska to provide a "hearing" (subject to judicial review) for every parole eligible offender.

If the supreme law of the land is to be changed then this Court should reverse and remand this case and require the A.G. to petition the U.S. Supreme Court to make the change they seek.

Respectfully submitted,

David H. Jacob, pro se
P.O. Box 2500/37269
Lincoln, NE 68542-2500

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of this Appellant's Reply Brief was placed into the possession of Dept. of Corr. Svcs. staff for mailing by first-class, postage prepaid U.S. mail to: James D. Smith, Asst. A.G., 2115 State Capitol, Lincoln, NE 68509-8920, on this 20th day of June, 2016.

David H. Jacob

Ct#779874
$50.00

**FILED**

MAR 20 2017

NEBRASKA SUPREME COURT
COURT APPEALS

IN THE NEBRASKA SUPREME COURT

DAVID H. JACOB,                    )        A - 15 - 1037
                    Appellant,     )
        vs.                        )
                                   )        PETITION FOR FURTHER REVIEW
ROSALYN COTTON, Chairperson,       )
NEBR. BOARD OF PAROLE,             )
                                   )
                    Appellees.     )

COMES NOW the Appellant, pro se, pursuant to Neb.Ct. Rule §2-102(F) and

petitions the Court for further review of the Court of Appeals ruling in this

matter. Appellant assigns the following errors:

    1. The Court of Appeals erred in their analysis, and finding the petition

failed to state a claim for a violation, of the Ex Post Facto prohibition.

    2. The Court of Appeals erred in their analysis of, and finding the Board

did not violate the separations of powers provision of the Nebraska Constitution.

    3. The Court of Appeals erred in failing to find a Due Process violation

in the current Parole Board process of "reviews" for parole eligible offenders

rather than "hearings."

    WHEREFORE, for the reasons argued in the Memorandum Brief in Support of

this Petition, the Appellant prays the Court will grant further review of

the Court of Appeals decision, reverse their ruling with a statement of the

Appellant's constitutional rights regarding the Nebraska Parole statutes and

current Board of Parole's procedures in light of the U.S. Supreme Court's

decision in Greenholtz v. Inmates, 442 U.S. 1 (1976), and remand this case

to the District Court for a vindication of those rights.

                                   Respectfully submitted,

                                   David H. Jacob, pro se
                                   P.O. Box 2500-37269
                                   Lincoln, NE 68542-2500

000086028NSC

010.056.039.21

IN THE NEBRASKA SUPREME COURT

| | | |
|---|---|---|
| DAVID H. JACOB, | ) | A - 15 - 1037 |
| Appellant, | ) | |
| vs. | ) | APPELLANT'S MEMORANDUM BRIEF |
| | ) | |
| ROSALYN COTTON, Chairperson, | ) | IN SUPPORT OF |
| NEBR. BOARD OF PAROLE, | ) | |
| | ) | PETITION FOR FURTHER REVIEW |
| Appellees. | ) | |

COMES NOW the Appellant, pro se, and presents the following Memorandum Brief is Support of his Petition for Further Review. The Appellant has assigned three errors:

1. The Court of Appeals erred in their analysis, and finding the petition failed to state a claim for a violation, of the Ex Post Facto prohibition.

First, the Court of Appeals and the District Court below erred in not accepting the factual allegations of the Petition as true; Rafert v. Meyer, 290 Neb 219 (2015); Doe v. Board of Regents, 280 Neb 492 (2010).

The Petition made a prima facie case for an Ex Post Facto violation. The Petition alleges that the Board, as a matter of written Board policy adopted long after the Appellant's sentence was imposed, uses changes in §28-105 to routinely enforce a greater penalty as the suitability standard for parole than was originally imposed upon the Appellant and others. The Petition shows the Appellant was sentenced when the statutory minimum sentence for Second Degree Murder was 10 years [T2, ¶¶4-6]. At that time the Board's policy used ten years to be considered suitable for parole for Second Degree Murder [T5, ¶¶28-32]. Nine years after the Appellant was sentenced, the statutory minimum sentence for Second Degree Murder was raised to 20 years in Neb.Rev.Stat. §28-105 [T3, ¶15]. In 2003, long after the Appellant was sentenced, the Board changed the suitability standard for Second Degree Murder in its' policy to

010.056.039.21?

be "in accordance with State Statute 83-192(9)." [T7, ¶36]. Neb.Rev.Stat. §83-192(9) said: "The review schedule shall be based on court-imposed sentences or statutory minimum sentences, whichever is greater." [T3, ¶¶17-20]. Connect the dots: The Board's latest policy uses the statutory increase in the minimum sentence for Second Degree Murder to continue to defer the Appellant to further reviews under §83-1,114(1)(b) because a 10 year minimum rather than the new statutory 20 year minimum as a suitability standard would depreciate the seriousness of the offense or promote disrespect for the law. [T5, ¶26].

The effect of the Board's change in the suitability standard is an ex post facto increase in the severity of the Appellant's sentence; Garner v. Jones, 529 U.S. 244 (2000); California v. Morales, 514 U.S. 499 (1995). It is this EFFECT, not the form of the statute(s) that determine whether an ex post facto violation has occurred; Weaver v. Graham, 450 U.S. 24 (1981); Shepard v. Houston, 289 Neb 399 (2014).

The Court of Appeals analysis of the Ex Post Facto claim was in error because it relied upon the "form" of Neb.Rev.Stat. §83-1,114(1). The Court below said that there had been no changes to §83-1,114 since the commission of the Appellant's offense [p.2, Memorandum Opinion]. It was error to ignore the effect; Weaver, et al., supra. Neb.Rev.Stat. §83-1,114(1) sets out four categories for which the Board may deny parole. The statute does not set out what specific facts are required to come to the conclusion that an offender's case fits into one of those categories. [See, the Due Process Assignment of Error, #3, below.]

Second, the Court of Appeals erred by concluding that the Board of Parole had statutory discretion to defer the Appellant [p.4, Memorandum Opinion]. Just because the Board MAY HAVE HAD valid reasons to defer DOES NOT MEAN the

010.056.039.21?

Board relied upon such reasons. The factual allegations are that the Board DID violate the ex post facto prohibition, and if that is the effect of the Board's discretion, the Court of Appeals conclusion does not defeat the factual allegations that should have been accepted as true; Rafert v. Meyer, et al., supra. Even a non-lawyer can understand that the Board COULD HAVE answered the Petition and denied the factual allegations; BUT THEY DID NOT. Therefore, the Courts below erred because they failed to accept the Petition's factual allegations as true and require the Board to respond to them.

2. The Court of Appeals erred in their analysis of, and finding the Board did not violate, the separations of powers provision of the Nebraska Constitution.

The Court of Appeals argues that the Board has the power to defer parole because of the "conditions" the Legislature has created in statute [P.4, Memorandum Order]. However, the Court never discusses whether it is a Judicial branch power to determine the severity of an offender's sentence, specifically under the standard of not depreciating the seriousness of the offense nor promoting disrespect for the law. Neither the District Court nor the Court of Appeals denied this was a Judicial branch power. But even if the power is reserved to the Judicial branch, the Legislature could still delegate it to the Executive branch Board of Parole IF the Legislature provides sufficient standards and an appeal process; Anderson v. Tiemann, 182 Neb 393, 403 (1967). The Court of Appeals' failure to examine whether this is a Judicial branch power renders their analysis inadequate or, at best, incomplete.

As in #1 above, the Petition alleges, as fact, that it is a Judicial branch power to impose a sentence [T2, ¶¶4-7] that does not depreciate the seriousness of the offense or promote disrespect for the law [T2-3, ¶¶10-14].

010.056.039.217

Note how the Legislature has not only created a statutory procedure for the Executive branch to challenge such a sentence and that that process includes an appeal procedure [T2, ¶¶10-11]. Thus that delegation meets the requirements stated by this Court in Anderson v. Tiemann, supra. These allegations should have been accepted as true; Rafert, supra.

Note also that the question left unanswered by the Court of Appeals, whether the Legislature's delegation was constitutionally adequate or not, was unnecessary during the Greenholtz v. Inmates timeframe when the Board's procedures were "[t]wo types of hearings ... initial parole review hearings and final parole hearings." Greenholtz v. Inmates, 442 U.S. 1 (1976). Everything was a "hearing" back then. It is only the Legislature's statutory change that allowed the Board to provide only unappealable "reviews" that raised this constitutional question [T9-10, ¶¶52-55]. You can't play word games to evade constitutional requirements. This constitutional question must be answered and the case should be remanded back to the Courts below.

3. The Court of Appeals erred in failing to find a Due Process violation in the current Parole Board process of "reviews" for parole eligible offenders rather than "hearings."

The Court of Appeals makes the same error the District Court below made. They both ignore the fact that Nebraska's parole procedures are NO LONGER the same as they once were in the time of Greenholtz v. Inmates, 442 U.S. 1 (1976). If you can't see this then you also can't see that this is one of the major reasons behind the current prison overcrowding.

In 1976 the U.S. Supreme Court found the procedures the Board was following to be adequate to meet the requirements of Due Process. To make such a

010.056.039.217

determination the Court first found Nebraska's parole release statute, Neb. Rev.Stat. §83-1,114, created a liberty interest which was entitled to some protection under the Due Process clause; Id. at 12 (... the expectancy of parole provided in this statute is entitled to some measure of constitutional protection.) Since §83-1,114 has NOT been changed the same protection must still exist today.

The parole procedures in 1976 were described in Greenholtz. The Court found, "Two types of hearings are conducted: initial parole review hearings and final parole hearings." Id. at 4 (emphasis added). Thus, every parole procedure was a HEARING in 1976. The Court also said: "However, since the Nebraska Parole Board provides at least one and often two hearings every year to each eligible inmate, we need only consider whether additional procedures mandated by the Court of Appeals are required under the standards set out in [citation omitted]" Id. at 14 (emphasis added). As hearings, those parole procedures allowed offenders to appeal the decision of the Board. But as we shall show, without an appeal process, the lack of those additional procedures result in Due Process violations. The Courts below failed to consider the consequences of a lack of a hearing had on those additional procedure decisions made by the Greenholtz Court. They recite to them without acknowledging their dependence on the "hearings" finding.

Since the Greenholtz decision, Nebraska's parole procedures have changed significantly; partly because of the overcrowding they caused. The 2003 change, 2 years after the Tecumseh prison opened, to Neb.Rev.Stat. §83-1,111 replaced "hearing" upon parole eligibility with only "reviews," eliminating the offender's ability to appeal from an arbitrary decision by the Board. When talking about

010.056.039.211

the particular evidence in the inmate's file the Greenholtz Court said, "The Board's decision is much like a sentencing judge's choice-- provided by many states-- to grant or deny probation following a judgment of guilt...." Id., at 16. In Nebraska, such a probation decision has the opportunity for an appeal, just as the parole procedures in place in 1976 did.

That mattered in the Appellant's case and the Court of Appeals decision shows the difference. On p.2 of the Memorandum Order, the Cour tof Appeals describes the facts the Board (only in a later letter [T22]) used to reach the conclusion under §83-1,114(1)(d). I.e., the "recommendation was made based upon records reflecting that the current offense occurred after a lengthy drug/alcohol spree" and stated Jacob "self-admitted to the use of marijuana, hashish, opium, mescaline, acid, speed, and cocaine." That IS a statement of the record evidence that led the Board to the opinion that §83-1,114(1)(d) should require the Appellant to complete drug treatment before his release on parole. [Since then the Appellant was admitted into and successfully completed the RTC drug program at NSP.] Furthermore, the Board did not share their reason in the review itself; hence the letter after the Board provided a written "Notice" [T18] using only the statutory boilerplate.

However, when it comes to §83-1,114(1)(b), the Board's other excuse for denying parole, the Board offers no reason why the records led them to the opinion that "The nature/circumstances of your offense(s) indicates that an early release would depreciate from the seriousness of your crime and promote disrespect for the law." [T18] Whose file are they looking at? Is it one crime but multiple offense(s)? Or one offense and multiple crimes? In the review, the Board only referred to the "opposition" to my parole.

010.056.039.217

This is significant in the Appellant's case. As I described in the Brief to the Court of Appeals, a codefendant, Ken Johnson, hung himself in the county jail before a trial could take place. I was offered and accepted a plea agreement to Second Degree Murder before that happened. A trial would have shown the public that it was Ken Johnson who fired the fatal shots. The police reports and the autopsies (which should be in the Board's files) would show that I have admitted and accept my guilt as an aider and abettor. Does the files before the Board have that information? There is no way of knowing. But I do know that the Board told me the reason I would be deferred was "opposition" from the public. Does the Board know if the "opposition" is based on facts, or would the Appellant's file refute what that "opposition" believes? The Board did not say, they merely repeated the statutory biolerplate language from §83-1,114(1)(b).

Simply repeating the statutory language from §83-1,114(1)(b) does not satisfy the standard stated in the Greenholtz decision:

> The parole determination therefore must include consideration of what
> the entire record shows up to the time of the sentence, including
> the gravity of the offense in the particular case.
>
> Id., at 15.

Under Greenholtz, "opposition" contemporaneous to and in the sentencing record Must be used. But "opposition" that comes only later requires a hearing so that the Appellant could use the file and record to refute (and educate) that "opposition." How can we know if the "opposition" the Board referred to is anything but arbitrary and/or erroneous. The "opposition" may believe that I am the principle actor in the crimes and might change if they knew the truth.

010.056.039.21?

The lack of an appeal process would permit the Board's arbitrary and erroneous decision to go unquestioned. A process that cannot prevent arbitrary decision-making violates the touchstone of Due Process; Wolff v. McDonnell, 418 U.S. 539, 558 (1974); Dent v. West Virginia, 129 U.S. 114, 123 (1889). So while, in an environment that guaranteed an appeal, the Board would not have to state what evidence they relied upon to deny parole; Greenholtz, supra, at 16; an environment without an appeal process could permit arbitrary decisions by not subjecting them to appellate scrutiny. That is what has happened to the Appellant and the Courts below erred in finding otherwise.

As above, the Petition made factual allegations that the Board violated the Appellant's Due Process right. The Board has failed to even deny that. This Court should grant further review, correct the procedures that should be followed under the facts in the Appellant's case, and remand the case to the Court below.

CONCLUSION

The Court of Appeals' errors on these constitutional issues should be reviewed by this Court. The Appellant prays the Court will grant that review.

Respectfully submitted,

David H. Jacox, pro se
P.O. Box 2500-37269
Lincoln, NE 68542-2500

010.056.039.217

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of his Petition for Further Review

and the Memorandum Brief in Support were placed into the possession of Dept.

of Corr. Svcs. staff for mailing by first class, postage prepaid U.S. mail

to: James D. Smith, Asst. A.G., 2115 State Capitol, Lincoln, NE 68509-8920

on this 10th day of March, 2017.

David H. Jacob